Citation Nr: 1730436 
Decision Date: 07/31/17 Archive Date: 08/04/17

DOCKET NO. 10-19 056 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to service connection for a left wrist disability.

2. Entitlement to service connection for a stomach disability, to include gastroesophageal reflux disease (GERD).

3. Entitlement to service connection for headaches.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

M. G. Perkins, Associate Counsel


INTRODUCTION

The Veteran had active military service from January 1989 to January 1993, to include service in South West Asia from December 1990 to April 1991.

These matters come before the Board of Veterans' Appeals (Board) from a March 2008 rating decision of the Department of Veterans Affairs (VA), Regional Office (RO) in Houston, Texas.

The Veteran appeared at a December 2013 hearing before the undersigned Veterans Law Judge. A transcript of the hearing is of record.

These matters were most recently before the Board in April 2014 and May 2016 and remanded for additional development.

The May 2016 remand included the issue of service connection for a right arm disability. Thereafter, in a July 2017 rating decision, the RO granted entitlement to service connection for a right shoulder impingement syndrome with arthritis (formally the right arm disability claim). Thus, that issue is no longer before the Board. The remaining issues have been returned to the Board for further appellate proceedings.

The issues of left wrist and stomach disabilities are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDING OF FACT

There has been no demonstration by competent medical, nor competent and credible lay, evidence of record that the Veteran's headache disability is related to service.


CONCLUSION OF LAW

The criteria for service connection for headaches have not been met. 38 U.S.C.A. §§ 1101, 1112, 1113, 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.317 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

With respect to the Veteran's claim herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). The Board is satisfied that there has been substantial compliance with the March 2014 remand directives and the Board may proceed with review. Stegall v. West, 11 Vet. App. 268 (1998). 

II. Service Connection - Headaches

a. Legal Criteria

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999). For chronic diseases listed in 38 C.F.R. § 3.309(a) - including organic diseases of the nervous system - service connection may also be established by showing continuity of symptoms. 38 C.F.R. §§ 3.303(b), 3.309(a); see Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (holding that only those chronic diseases listed in § 3.309(a) are subject to service connection by continuity of symptoms as described § 3.303(b)); Savage v. Gober, 10 Vet. App. 488 (1997). Migraine headaches are not specifically listed as a chronic disease, but a July 2013 Addendum Compensation Service Bulletin indicates that migraine headaches should be recognized as an organic disease of the nervous system. The Board will consider the continuity and chronicity provisions of 38 C.F.R. § 3.303 (b). 

Competent lay evidence is any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (a)(2). This may include some medical matters, such as describing symptoms or relating a contemporaneous medical diagnosis. Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007).

b. Analysis

The Veteran contends that he began to experience headaches while in service, and continued to experience headaches after separation. 

During a September 1998 hearing, the Veteran testified that the headaches started after he returned from the Persian Gulf and sought treatment while in service at a military hospital and was prescribed medication to treat his headaches. 

In December 2013, the Veteran had a hearing before the undersigned Veterans Law Judge and testified that he first experienced headaches during Desert Storm while fueling a tank and getting fuel in his eyes. The Veteran reported that is when his "head was hurting." The Veteran also reported that he then experienced headaches two to three times per week. After he got out of the military he started seeing different specialist who gave him medication. At the time of the Board hearing the Veteran stated that he still experienced headaches once or twice a week, and used over the counter medication to treat them.

A review of the Veteran's service treatment records (STRs) does not show any complaint of headaches or fuel contamination to the eye. Additionally, there is no documentation of any headache medications prescribed to the Veteran during service; specifically that reported during the September 1998 Board hearing. During his separation exam Report of Medical History, the Veteran reported stated "1. I am currently in good health; 2. I am not on any medication." The Veteran also checked "yes" next to items that he currently had or has had to the following: bled excessively after injury or tooth extraction, swollen or painful joints, cramps in your legs, VD-Syphilis, gonorrhea, etc., painful or "trick" shoulder or elbow, and have vision in both eyes. The Veteran checked "no" next to frequent or severe headache, and eye trouble. 

The first documented report of having experienced headaches is in a VA medical center (VAMC) record from October 1994, where it states "Veteran has a history of headaches for two years." The Veteran also reported a history of headaches in October 1994 during private medical treatment for back pain. In February 1995, a VAMC record documents that the Veteran was treated for headaches worsening over past five months and was prescribed calan SR and cafergot. In a VAMC neurology report from December 1995, it was documented that the Veteran had a history of headaches for four years and was treated with verapamil and cafergot. In June 1999, the Veteran sought private treatment for a throbbing headache to the temporal area. He was treated again in September 1999 and was treated by a neurologist, who stated that the Veteran had a history of headaches associated with photophobia since 1990. In September 2002 another private neurologist documented that the Veteran reported he has had headaches since 1990, and that he was currently experiencing one to two headaches a week. The Veteran had a follow up appointment with the same neurologist in October 2002. During that visit the Veteran stated he experienced improvement with his headaches which were occurring two to three times a week. The neurologist documented that once he told the Veteran that he had previously mentioned that he was experiencing headaches one to two times a week, "he changed his statement and stated that they are occurring about the same."

Pursuant to the May 2016 remand, the Veteran was afforded a VA examination in July 2016 for his headaches. During the examination, the Veteran reported that he has had headaches since 1990 when he splashed fuel in his eyes. The Veteran reported that he was treated in service for the headaches. The headaches were described by the VA examiner as retroorbital in location, and occasionally spread to become holocephalic, throbbing in character, generally moderate, occasionally to moderate-severe in intensity. The Veteran does not experience a preceding aura. Some his headaches are associated with nausea, rarely vomiting, blurred vision, photophobia and phonophobia. The Veteran experiences two episodes per week and the headaches last up to two hours and prostrating headaches two to three times per year. The VA examiner diagnosed migraine headaches including migraine variants. The VA examiner opined that since the Veteran was recently diagnosed with obstructive sleep apnea (OSA) he should be reevaluated after the optimal treatment of OSA, since untreated OSA can worsen headaches.

In December 2016, the VA examiner submitted an addendum opinion which stated that since, "there is no objective evidence of the presence of headaches during active military service or within a year of leaving military service, it is less likely that the Veteran's current headaches incurred in service or are casually related to service." The rationale provided for the opinion was that there was no documentation of any headaches or fuel incident while in service. The examiner further opined:

Despite, [the Veteran's] claims of having headaches for 2 years prior to leaving service, he did NOT endorse them in 1992 at the time of exit from the military. Hence, if the headaches were due to eye irritation from the fuel splashing they should have been mentioned during service or in exit physical with eye trouble ("No" to both in exit physical).

Based on a review of the record, the Board finds that the service connection for headaches is not warranted. Numerous STRs are negative for complaints of, or treatment, specific to headaches or migraines.

Throughout his claim, the Veteran has provided more than one scenario as to when he started experiencing headaches. During the September 1998 hearing, the Veteran stated his headaches began after he returned from Desert Storm, and sought medical treatment from a military hospital. In the December 2013 Board hearing, he stated that he first experienced headaches while deployed for Desert Storm after getting fuel in his eyes while fueling a tank. 

The Board notes that the Veteran documented many conditions on his Reports of Medical History completed upon separating from service, but did not include headaches among them. The most recent VA examiner specifically considered the Veteran's report of the onset of headaches in service and found the absence of any complaints at separation significant. Despite claiming he had headaches for two years prior, he did not report them, when this examiner thought they would have been mentioned. The Board agrees that if he had experienced frequent headaches to the degree of disability described, it seems reasonable that he would have reported that. Thus the Board finds the Veteran's assertions of headaches in service less than credible. The records contemporaneous to service are more probative than the Veteran's statements made years later for compensation purposes.

Given the specific indication of "no" to headaches at separation, while also answering "yes" to numerous other problems, the Board then affords limited probative value to the Veteran's post-service reports dating the onset of headaches to service and continuing since then. Thus, consideration of whether service connection is warranted on the basis of continuity of symptomatology or onset within one year of separation is not warranted. 

The Board has considered all of the pertinent evidence of record to include the Veteran's STRs, his post service clinical records, the clinical opinions, and the Veteran's lay statements and finds that the preponderance of the evidence is against a finding that the Veteran's headaches are caused by or causally related to service. Therefore, the claim of service connection for headaches must be denied. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER
Entitlement to service connection for headaches is denied.


REMAND

The Veteran is seeking service connection for a left wrist disability and a stomach disability. For the reasons discussed below, there has not been substantial compliance with the May 2016 remand instructions and another remand is required. Stegall v. West, 11 Vet. App. 268, 271 (1998).

Pursuant to the most recent remand, the Veteran was afforded VA examination in July 2016 for his left wrist disability and stomach disability. 

During the VA examination for the left wrist, the VA examiner opined that the "Current left wrist is not caused by or result of active duty." The examiner's rationale was that "The intervention that led to the surgery is silent for referred nexus to active duty but is specific to mechanism of injury post service." The examiner further stated "I have reviewed the conflicting medical evidence and am providing the following opinion: NONE." 

Despite the Board's instructions, the July 2016 examiner did not document that he elicited history from the Veteran during the examination of the onset or mechanism of injury, and that he relied on the lack documentation in the Veteran's medical records to make a negative opinion without interviewing the Veteran's for him to explain when and how the injury occurred. As directed in the remand, the examiner should have discussed any symptoms the Veteran has had with his left wrist and continuity of those symptoms since leaving service before seeking treatment. Additionally, the examiner did not discuss the Veteran's statements during his December 2013 Board hearing that he injured his left wrist when he injured his knee, but the focus was on his knee injury which was more serious. 

The July 2016 examiner also referred to the RO's January 1993 denial of the Veteran's claim in his claims file as a basis that there is no evidence of an injury to the left wrist during service. It is improper for the VA examiner to rely upon or reference a RO decision as a basis for making a negative opinion. Due to an inadequate VA examination, a remand is necessary to obtain a supplemental opinion. See Barr v. Nicholson, 21 Vet. App. 303 (2007).

The VA examination for entitlement to service connection for a stomach disability is also inadequate. The May 2016 remand directed the VA examiner to determine the nature and likely etiology of the Veteran's stomach complaints, to include whether he suffers from an undiagnosed disability manifested by gastrointestinal symptoms, to include irritable bowel syndrome (IBS). However, the examiner only focused the opinion on IBS and did not identify whether it is IBS that the Veteran suffers from or whether the Veteran also suffers from an undiagnosed disability manifested by gastrointestinal symptoms. In forming the opinion, the VA examiner did not consider the Veteran's competent report of symptoms during and after service and relied on the absence of medical records documenting any IBS during and after the Veteran left service. 

Furthermore, the examiner provided the opinion that "this is not caused by or result of Persian Gulf, related to service or diagnosed in service, nor aggravated by service." However, there is no rationale provided why it is not caused by or the result of the Persian Gulf, or related to service. 

Under these circumstances, the Board finds that further opinion is necessary regarding the nexus of the Veteran's current stomach condition service. Further, the examiner on remand must consider the Veteran's lay statements concerning the onset and continuation of his symptoms and may not rely on the absence of medical treatment or documentation in the record as the basis for a negative medical nexus opinion.

Accordingly, the case is REMANDED for the following action:

1. Contact the examiner who conducted the July 2016 examination, or another appropriate examiner, to obtain a supplemental medical opinion to determine the nature and likely etiology of the left wrist disorders. Copies of all pertinent records should be made available to the examiner for review. 

If the examiner cannot provide an opinion without an examination, the Veteran should be scheduled for the examination. 

In addition the examiner is asked in the opinion to include the following:

Is it at least as likely as not (a 50 percent probability or greater) that a left wrist disorder, including arthritis, was manifest in service or within 1 year of discharge, or is otherwise causally related to service, to include as a result of left wrist injury therein?

The examiner is asked to address the Veteran's lay statements of how the injury occurred, specifically his statement during the December 2013 Board hearing that he injured when he injured his right knee.

The examiner may NOT rely on the absence of a medical record or evidence of medical treatment as the sole rationale for any negative medical nexus opinion.

The examiner must explain the rationale for all opinions, citing to supporting factual data and medical literature, as appropriate. If the examiner determines that the questions cannot be resolved without resorting to speculation, then an explanation as to why this is so must be provided.

2. Contact the examiner who conducted the July 2016 examination, or another appropriate examiner, to obtain a supplemental medical opinion to determine the nature and likely etiology of his stomach complaints, to include whether he suffers from an undiagnosed disability manifested by gastrointestinal symptoms. Copies of all pertinent records should be made available to the examiner for review. 

If the examiner cannot provide an opinion without an examination, the Veteran should be scheduled for the examination.

Based on the examination and review of the record, the examiner should answer the following: 

a) Does the Veteran suffer from any gastrointestinal symptoms that cannot be attributed to a known diagnosis, to include IBS? 

b) If any of the gastrointestinal symptoms/conditions listed in a) cannot be attributed to a known diagnosis, are they signs or symptoms of an undiagnosed illness?

c) If the symptoms/conditions listed in a) can be attributed to a known diagnosis, is it at least as likely as not (within the realm of 50 percent probability or greater) that they were caused or aggravated by service, to include environmental conditions in the Persian Gulf, or otherwise as shown in the service treatment records?

The examiner is to specifically consider and address the Veteran's competent assertions regarding his in-service gastrointestinal symptoms and post service continuity of such symptoms. 

3. Thereafter, readjudicate the issues on appeal. If any benefit sought is not granted, issue a Supplemental Statement of the Case and afford the appellant and his representative an appropriate opportunity to respond. Thereafter, the case should be returned to the Board, as appropriate for further appellate consideration.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
M.E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs